**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ADRIEL OSORIO, on behalf of himself and all similarly situated persons, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:08-cv-03228 |
| v. | ) ) ) | Judge John Darrah |
| SPRINT/UNITED MANAGEMENT COMPANY and SPRINT NEXTEL CORPORATION, | ) ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Adriel Osorio ("Plaintiff"), individually and on behalf of similarly-situated Settlement Class members defined below, requests that the Court enter an order finally approving the parties' Agreement and Stipulation of Settlement and Release (the "Settlement" or the "Agreement") between Plaintiff and Defendant Sprint/United Management Company ("Defendant" or "Sprint"), and finally approving the form of Class Notice and its method of dissemination to the Settlement Class (comprised of a Rule 23 class and an FLSA collective). The parties' proposed Order is submitted herewith as Exhibit 1 and will be submitted to the Court in electronic format.

Participation by the class in the settlement has been very positive. Approximately 13,000 class members have submitted Claim and Opt-In Forms, and only one member of the class has objected to the settlement. Only three class members exercised the right to opt out of the settlement. The actions of the class members reinforce the Court's preliminary conclusion that

the settlement is fair, reasonable and adequate.  As a result, Plaintiff respectfully submits that the Settlement should be finally approved.

## I.     Preliminary approval and dissemination of notice.

On March 3, 2011, the Court held a hearing to consider Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Notice.  After consideration of the Settlement Agreement and plan of notice, the Court entered an order of preliminary approval.  (Doc. 161). In accordance with the March 3rd Order, the parties caused Kurtzman Carson Consultants LLC, the Claims Administrator, to distribute the Notice to Class members by first class mail.  Exhibit 2, Declaration of Jonathan Carameros Re: Notice Procedures.

The Notice was mailed to 34,695 people.  Exhibit 2.  The Notice informed Class members that "opt-out" requests were due on May 9, 2011 and that any objection to the Settlement was due on May 9, 2011.  Only three Class members (less than one hundredth of a percent of the Class) submitted timely and valid opt-out forms; and only one Class member objected to the Settlement.  Exhibit 2.

## II.     Background and summary of settlement.

Plaintiffs' Third Amended Complaint (Doc. 150) alleges that Defendants failed to pay Sprint retail store employees wages and overtime for working in excess of 40 hours per week, for daily store opening or closing duties, pre-shift or post-shift work, and attending mandatory meetings, and for time elapsed during computer and/or software start-up or log-in, and failed to properly and timely pay overtime adjustments, based on hourly rate plus commission, in violation of Defendants' contract with Plaintiff and the Class Members, the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*("FLSA"), state wage payment and collection acts, including the Illinois Wage Payment and Collection Act, 820 ILCS §115/3 ("IWPCA"), and state law overtime

acts, including the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq*. ("IMWL"), and the common law of unjust enrichment. Sprint has denied these allegations.

Through mediation, Plaintiffs and Defendants reached an agreement to settle this controversy on a class-wide basis. Plaintiffs and their attorneys believe the settlement is fair, reasonable, and adequate for the class members. The class members have reacted very favorably to the settlement, as 34.7% have opted-in and filed claims, only 0.0008% have opted out, and only one has objected. The due date for claims was extended to June 6th, 2011, but the due dates for opting out or objecting expired on May 9th, 2011.

The key terms of the Settlement are as follows:

      (a)    <u>Class certification</u>.

The parties stipulated to certification of a class/collective for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and 29 U.S.C. § 216(b) defined as follows: All individuals employed by Sprint/United Management Company ("Sprint") who worked in a Sprint retail sales location in the United States, at any time from June 5, 2005 through April 21, 2010, and were classified under any of the Job Codes on the Job Code List attached to the Settlement and Notice issued in the case and attached hereto as Exhibit 1.

Excluded from the Settlement are individuals who were members of a previous settlement class concerning claims of unpaid compensation in the lawsuit *Webster v. Sprint PCS*, No. 06-4623, resolved in the United States District Court for the Central District of California, and who worked at one or more Sprint retail locations and time periods that are covered entirely by the *Webster* settlement. Class members whose periods of employment concerning allegedly unpaid compensation are released partially by *Webster* will only be included in this Settlement to the extent they worked for Sprint during a period not covered by the *Webster* settlement. In such

a case, an individual's recovery of benefits under this Settlement will be pro-rated by excluding the amount of time worked at a Sprint retail location for Defendant that is released by the *Webster* settlement.

Also excluded from the Settlement are any claims by Class Members for unpaid commissions covered by any claim, judgment or settlement in *Sibley et al. v. Sprint Nextel Corp.*, 08 cv 2063 (KHP)(JVO) (D. Kansas). However, overtime adjustment payments based upon commission-adjusted regular or overtime rates alleged to have arisen from unpaid commissions are included in this Settlement.

(b)     Class Counsel and Class Representatives.

The Court appointed Adriel Osorio, Esriel Franco, Brenda Moore, and Jeremy Cioe as Class representatives, and appointed Robin Potter and Robin Potter & Associates, P.C., and Ilan Chorowsky and Progressive Law Group, LLC as Class Counsel in this action.

(c)     Monetary relief available to the class members.

Sprint created a settlement fund in the amount of $2,712,200.00. The Settlement Fund will cover all payment obligations of Sprint under this settlement, including all Class member payments and all of Plaintiff's attorneys' fees and expenses.

(d)     Class notice.

The parties have provided notice to the class members by first-class mail. After the Court entered its Order of Preliminary Approval and Conditional Certification on March 3rd, 2011, the claims administrator, Kurtzman Carson Consultants, LLC, mailed the class notice to the class members by first-class mail at their last known or updated addresses, and created a website with the Notice document and other relevant information for use by class members. As evidenced by

the Declaration of the Claims Administrator (Exhibit 2), filed herewith, the Notice plan approved by the Court has been successfully completed.

> (e)    Incentive awards and attorneys' fees and costs.

Sprint has agreed to pay incentive awards to the Class representatives from the Settlement Fund. Sprint agreed to pay $6,500.00 to lead plaintiff Adriel Osorio, $1,700.00 to Esriel Franco, and $2,000.00 to Brenda Moore and Jeremy D. Cioe for their efforts on behalf of the other class members. Furthermore, Sprint has agreed to pay Class Counsel $904,066.67 from the Settlement Fund (one-third) for their attorneys' fees and litigation costs.

## III.    The court should approve the settlement.

### A.    Standard for judicial evaluation and approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *SeeIsby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

### B.    Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.

The factors considered are: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby, supra*,

75 F. 3d at 1198- 1199; *GE Capital Corp. v. Lease Resolution Corp.*, 128 F. 3d 1074, 1082 (7th Cir. 1997); *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (for factors (5) and (8)). Here, these factors show that the settlement should be approved.

### 1. Strength on the merits compared to the settlement amount.

Generally, the most important factor in determining whether a settlement should be approved is the comparison of the terms of the Settlement with the likely results of the litigation. *Hiram Walker, supra*, 768 F.2d at 889; *see also Synfuel, supra*, 463 F.3d at 653 (citations omitted).

Plaintiff alleges that Defendant failed to pay wages and overtime compensation to Sprint retail store employees, including, for example, Lead Retail Consultants, Senior Retail Consultants, and Retail Consultants, in at least three ways. First, Defendant allegedly required employees to record work-time of 40 hours or less per week but to work in excess of 40 hours per week, to record work in excess of 40 hours per week without receiving commensurate overtime compensation, and to perform uncompensated tasks such as attending mandatory meetings, working before or after scheduled work hours, and opening or closing a store. Second, Defendant allegedly did not pay employees for time spent logging-in to report for work or beginning a work shift. Third, Defendant failed to properly or timely include commissions earned when computing overtime adjustments due to employees. Through the litigation process and diligent representation of the Class, Plaintiff's counsel attempted to substantiate this alleged misconduct.

For its part, Sprint argued that Plaintiff's claims should be dismissed. Sprint also vigorously argued that Plaintiff's action be stayed in light of litigation in the United States

District Court for the Southern District of New York, where, Sprint, argued, similar claims were unsuccessful.

The Settlement provides a money payment to every class member who submits a claim and opt-in form, and provides information sufficient to identify the Class members and calculate their settlement payment. The Settlement distribution formula rewards Class members in proportion to the number of hours worked, so that Class members who worked longer, and who arguably merit more damages, receive a greater Settlement amount.

### 2.    Defendants' ability to pay.

In the context of a class-wide settlement, courts typically consider the defendant's ability to pay. *See Hispanics United of DuPage County v. Addison*, Illinois, 988 F. Supp. 1130, 1150, 1166 (N.D. Ill. 1997) (Castillo, J.). Publicly available records indicate that Sprint is one of the largest retailers of cellular phones, services and related products and services in the United States. Its ability to pay is not a factor.

### 3.    The likely costs, complexity, and length of further litigation.

Class actions have a well-deserved reputation for complexity. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). This case is no exception. Litigation of the class certification and collective certification issues would require a significant commitment of time and financial resources. Sprint's position with regard to the merits of Plaintiffs' claims indicates that if litigation ensues, it would engage in an expensive and lengthy discovery campaign of putative Class members designed to illustrate variation among different employees or a lack of factual support for the claims asserted. Further, Sprint successfully opposed class certification in another FLSA action in the Southern District of New York, and therefore could be expected to vigorously litigate that issue in the present case. In addition, in the absence of settlement, a

lengthy and expensive trial would be a virtual certainty. Given the nature of the case, it is a most likely that all post-trial appellate rights would be exercised. The settlement avoids the uncertainty, length of time and high costs associated with continuing this hard-fought litigation, in which the parties have endured ongoing disputes in the course of exchanging extensive formal and informal discovery, and extended information gathering and data analysis of multiple claims. The Court should finally approve the settlement because the settlement will minimize the inevitable costs of future litigation of this matter and the attendant delay in class members receiving any relief.

### 4. Opposition.

A low rate of opt-outs or opposition reflects favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). That is the case here.

Of close to thirty-five thousand class members, only one member of the class filed an objection to the settlement. The letter of objection, while it expresses the view that class-wide damages are warranted, misinterprets the settlement and draws erroneous conclusions based on misapprehension of law. The objection states that there is law requiring Sprint to pay employees for a minimum of four hours if they attended a one hour meeting on their off day; but the parties are unaware of any legal authority or contractual promise supporting that claim. Additionally, the objection mischaracterizes the system of distribution of class funds, suggesting that the "average payout of approximately $180.81"is insufficient. In reality the settlement payouts are based upon the number of recorded hours worked by class members and thus vary greatly among the class members. The objection does not acknowledge the extended arms-length negotiations between Plaintiff's and Defendants' counsel, nor does it account for procedural battles and risks

accompanying protracted litigation that are unrelated to the merits of claims familiar to the particular objector. The sole objection raised, that the "average payout" and the amount due to class members is too little, is based on misunderstanding of the law and misreading of the settlement terms.

Just three class members submitted requests for exclusion, after receiving the notice of class action settlement. The "opt outs" represent less than one hundredth of one percent of close to thirty-five thousand class members. More than 99.9% of the class members have either opted-in or declined to oppose the settlement by objecting or opting-out. Such a low rate reflects favorably on a settlement. *See In re Mexico Money Transfer Litigation*, 164 F.Supp.2d 1002, 1021 (N.D. Ill., 2000) (Where "99.9% of class members have neither opted out nor filed objections to the proposed settlements, this acceptance rate is strong circumstantial evidence in favor of the settlements."). The minimal opposition and minimal number of requests for exclusion show that the class members support the settlement.

### 5. Absence of collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion. *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.) (citing *Scholes v. Stone, McGuire & Benjamin*, 839 F. Supp. 1314, 1318 (N.D. Ill., 1993)). The settlement record proves that the settlement is not the product of collusion. Plaintiffs and Defendants reached this Agreement only after considering: (1) the benefits to the Class; (2) the unfeasibility of individual judgments; (3) the evidence of liability in the case; and (4) the risks, costs, uncertainties, and delays of litigation.

The settlement is the culmination of extensive and hard-fought litigation. Plaintiffs' complaint went through four iterations and the parties litigated motions to stay, amend, and strike. Plaintiff and Sprint have engaged in arm's length settlement negotiations, have opposed each other on the merits and breadth of each of Plaintiff's claims, and have attended multiple settlement conferences, including a settlement conference in April 2010, in Chicago, Illinois, before the Honorable Jeffrey Cole. The parties were able to reach agreement with the assistance of Judge Cole after conducting formal and informal discovery, including exchange or development of various sets of data, audio-visual presentation and discussions, extensive analysis of employee time records, aggregated employee data, and overtime payment methods, and respective investigations and interviews conducted by Plaintiff's counsel and Defendants' counsel alike. Prior to the settlement conference of April 2010, the parties conducted extensive dual track negotiations regarding settlement over a period of several months, while also preparing to brief class certification and for trial.

**6.      Opinion of counsel.**

Class Counsel believe this settlement is fair, reasonable, and adequate. Class Counsel have litigated numerous class actions, including employment law actions. *See* Exhibits 3 and 4 (firm resumes). Under these circumstances, Class Counsel's opinion should be given great weight because of Class Counsel's extensive experiences in dealing with the myriad and complex issues involved in this case and class actions generally.

**7.      Stage of proceedings and amount of discovery.**

The stage of proceedings and amount of discovery supports final approval. The members of the class have been identified. The parties have compiled necessary discovery, and exchanged documents and data sufficient for Plaintiffs and their attorneys to evaluate the strength of this

case.  Plaintiff has amended the complaint three times, and the parties have litigated hard-fought motions, including motions to dismiss, stay, strike, and formal and informal discovery practice. At the time the material Settlement terms were reached, Plaintiff was prepared to move for class certification and had begun preparing for trial.

### 8. Public interest.

The public interest is best served by ending this case now.  Courts have held that a settlement of class action litigation serves the public interest where the settlement is "fair, reasonable and adequate." *Armstrong, supra*, 616 F.2d at 313.

## IV. <u>The Court should finally approve the notice.</u>

In compliance with the Court's March 3rd, 2011, preliminary approval order, the parties caused the approved class notice to be mailed to the class members.  Rule 23(e)(1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Under federal law, notice of the settlement must satisfy due process.  *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963-964 (3d Cir. 1983).  The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take.  7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

Here, the notice was sent by first-class mail to the Class members.  Exhibit 2.  In order to protect the rights of absent Class members, the Court must provide the best notice practicable to Class members.  *Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985).  Notice by first class mail is practical when the names and addresses of most of the Class members are known.  *See Manual for Complex Litigation* at §30.2111; *see also Mangone v. First USA Bank,*

206 F.R.D. 222, 231-232 (S.D. Ill. 2001) (approving mailed notice to last known addresses of a settlement class with nearly 18.5 million members).

Additionally, the content complied with the notice required for a contested class. Fed. R. Civ. Pr. 23 (c)(2)(B) (notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c)(3)."). Here, the content of the class notice stated all those things. (Doc. 153-3). Moreover, as provided by the Settlement, Class Counsel and the settlement claims administrator have dutifully fielded a wealth of calls from class members in order to answer their questions and facilitate the Settlement.

In conclusion, the Notice meets the legal standards for appropriate notice and satisfies Rule 23. *Id.* Therefore, the Court should find that the Notice complied with the Rules and Due Process.

## V.      The agreed attorneys' fees are appropriate.

Sprint has agreed to pay fees and costs to Class Counsel. Class Counsel undertook the case on a contingency basis and recovered a pool of money for the class. In the Settlement Agreement, Defendants agreed to pay Class Counsel fees and expenses totaling one-third of the Settlement Fund. The settlement notice notified the Class members about the parties' agreement on attorneys' fees, and only one class member has objected. Likewise, the CAFA notice informed the government entities about the fees and expenses and none objected. Exhibit 2.

Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). It is well settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill. 2d 560, 572-73 (2000). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of $20 million), citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). *See also Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238 (1995) ("[O]ne who 'creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees.'").

The market for legal services paid on a contingency basis shows the proper percentage to apply in a class action that creates a common fund for the benefit of the class. *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). Where lawyers working on a contingency basis in the relevant community typically charge one-third of any recovery to a private client, this shows that a similar fee is appropriate in a contingency class action. *Id.*

Here, Class Counsel's request of one-third of the settlement fund is within the market rate for this type of case. *See, e.g., Gonzalez et al. v. Plastival, Inc. et al.*, No. 05-04864 (N.D. Ill. Sept. 23, 2008) (awarding 33% of the settlement fund to attorneys' fees in a class action overtime wages case, plus costs) (Exhibit 5); *Perry v. National City Bank et al.*, No. 05-00891 (S.D. Ill. March 3, 2008) (awarding 33% of the settlement fund to attorneys' fees in a FLSA overtime wages case) (Exhibit 6); *Arrez v. Kelly Services, Inc.*, No. 07-01289 (N.D. Ill. Oct. 09,

2009) (awarding 30% of $11 million common fund to attorneys' fees in a IWPCA class action for vacation pay, plus costs) (Exhibit 7); *See also* Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008); *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. Sept. 30, 1996) (Williams, J.) (38% fee), *aff'd*, 160 F.3d 361 (7thCir. 1998); *Goldsmith v. Technology Solutions, Co*., 1995 U.S. Dist. LEXIS 15093(N.D. Ill. Oct. 10, 1995) (Guzman, J.) (33.3% fee).

The Court should approve Sprint's agreement to pay Class Counsel's fees and expenses.

**VI.    The incentive awards and payments to Plaintiffs are appropriate.**

Additionally, the Court should approve Sprint's agreement to pay $6,500.00 to Adriel Osorio, $1,700.00 to Esriel Franco and $2,000.00 each to Brenda Moore and Jeremy D. Cioe. These payments recognize their roles and participation as Class Representatives, and assistance in facilitating the litigation, negotiation and settlement of this matter.  Courts routinely award such "incentive payments" to the persons who assume the special litigation burden of class representative and thereby benefit the entire class.  *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives).

Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497, *citing* C. Krislov, SCRUTINY OF THE BOUNTY: INCENTIVE AWARDS FOR PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286 (June 1990). Class representatives assume the burdens of litigation that absent class members do not shoulder and

do so without promise of a reward and with the risk that the litigation may not succeed. The class representatives in this case were no exception; but for their initiative and participation, the benefits available to all Class members would not have been realized. The Court should approve Plaintiffs' incentive payments.

## VII.    Conclusion.

WHEREFORE, Plaintiff Adriel Osorio respectfully requests that the Court enter the parties' agreed final approval order, which is submitted herewith as Exhibit 1.

Respectfully submitted,

/s Robin B. Potter
Robin B. Potter

Robin B. Potter, Esq.
Denise M. Quimby, Esq.
ROBIN POTTER & ASSOCIATES, P.C.
111 E. Wacker Drive - Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robinpotter@igc.org
denise@potterlaw.org

Ilan Chorowsky, Esq.
Mark A. Bulgarelli, Esq.
PROGRESSIVE LAW GROUP, LLC
505 N. LaSalle, Suite 350
Chicago, Illinois 60610
(312) 787-2717
ilan@progressivelaw.com
markb@progressivelaw.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the preceding pleading was filed electronically with the clerk of the above-captioned Court on June 3, 2011. Notice of this filing will be served upon all counsel for parties of record by operation of the Court's electronic filing system including:

**Michael Lawrence Sullivan**
michael.sullivan@goldbergkohn.com

**Christopher J. Willis**
cwillis@rh-law.com

/s Robin B. Potter
Robin B. Potter
